HEARD NOVEMBER TERM, 1877.

### BARKER *vs.* SMITH.

Taxes assessed for the State for the fiscal year 1870–71 and for the city of Charleston for the year 1870 upon a lot in the city of Charleston *held* not to constitute an encumbrance upon the property in March, 1873, as between one holding under the owner, as whose property the land was assessed, and his vendee.

In the Acts relating to the taxation and assessment of property which were of force in 1873 there was no provision which in terms made taxes an express lien upon the property taxed, nor could any be implied from the powers therein conferred upon executive or administrative officers in the collection of taxes after such powers had been exhaustively exercised.

Where the provisions of the law in relation to advertising and selling property for taxes have been complied with by the officers whose duty it is to arrange for and make the sale, the property ceases to be subject to any lien for taxes, and it makes no difference that the law provides for future legislation to make the tax effective.

There was no statute of the State or ordinance of the city of Charleston of force in the year 1868 which made city taxes a lien upon real property for a longer period than one year.

Where the provisions of two ordinances relating to the same subject matter can be reconciled, the latest will not be held to have repealed the first on the ground of repugnancy between the two.

BEFORE COOKE, J., AT CHARLESTON, NOVEMBER TERM, 1877.

This was an action by Theodore G. Barker against William B. Smith for foreclosure of a mortgage.

The case upon which the appeal was heard is as follows:

The complaint is filed for the foreclosure of a mortgage given by the defendant to the plaintiff to secure a bond, a part of the purchase money of a lot of land in the city of Charleston.

The deed of conveyance by the plaintiff to the defendant contains this warranty: "And I do hereby bind myself, and my heirs, executors and administrators, to warrant and forever defend, all and singular, the said premises unto the said William B. Smith, his heirs and assigns, against me and my heirs and all persons whomsoever lawfully claiming or to claim the same or any part thereof."

The conveyance by plaintiff to defendant of this lot was on 25th March, 1873.

The plaintiff purchased at a public sale made by Mrs. Ellen Barker, trustee, on 10th May, 1871.

Mrs. Barker sold under a power contained in a conveyance in trust, by way of mortgage to her by Thaddeus Street, on 18th May, 1868. The price obtained for the property did not pay the debt.

The defense is, that there are certain State and city taxes unpaid by Thaddeus Street upon this property which are claimed by the

State and city to constitute liens on it prior to all other liens; that thus they constitute an encumbrance upon the land, against which he is protected by the warranty aforesaid. He offers to pay the balance due on the mortgage, less these city and State taxes, or to pay the whole balance due as soon as the taxes are paid by plaintiff or they are duly adjudged not to be prior liens upon the property.

## State Taxes.

In 1870 Thaddeus Street was assessed for total taxes upon property, real and personal, then standing in his name, (this lot being included,) for the fiscal year 1870–71, the sum of $140.55.

No distress was made by the State Treasurer upon his personal property, nor was his property advertised in 1871 or offered for sale for delinquent taxes.

On 12th May, 1874, the Auditor of Charleston County advertised for sale, for delinquent taxes for the years 1868, 1869, 1870, 1871, 1872, 1873, 1874, a large quantity of property. On the list for the year 1870 appears this entry: Street, Thaddeus, house and lot, East Bay. On Monday, 18th of May, 1874, the sale was had, and, there being no bidders, this house and lot, the one in question, was entered as forfeited to the State.

## City Taxes.

Thaddeus Street was charged on the books of the city of Charleston for taxes on property, real and personal, including this lot, for the year 1870, including penalties and costs, $262.30, and execution issued.

He was also charged on the same books for property, real and personal, including this lot, for the year 1871, taxes and penalties and costs, $203.67, and execution was issued.

The property has been advertised for sale for taxes, but never has been sold. The taxes, both city and State, with those exceptions, to this time, have been paid. The plaintiff denies that these State and city taxes above stated constituted a lien on this lot of land in the hands of the defendant, and denies that they are protected by the warranty or justify an offset to the bond.

The decree of His Honor the Circuit Judge is as follows:

On hearing the pleadings of this case, it is adjudged and decreed that the State and city taxes referred to in the answer of defendant

are valid and subsisting liens upon the mortgaged property mentioned and described in the complaint, and that the defendant is entitled to have the same paid by the plaintiff before being required to pay the amount due on his bond to plaintiff, or, if paid by himself, to have the amount so paid credited on his said bond.

If such taxes are paid by plaintiff, it is ordered that the defendant pay to the plaintiff the amount due on his bond; and if paid by himself, that he pay the balance then remaining due.

The plaintiff appealed.

*Simonton & Barker*, for appellant.

——————————, contra.

October 29, 1878.   The opinion of the Court was delivered by

WILLARD, C. J.   The complaint is for the foreclosure of a mortgage given by the defendant to the plaintiff to secure a bond for the purchase money of a lot of land in the city of Charleston.   The defendant purchased from the plaintiff with warranty, March 23, 1873, and at the same time gave the bond and mortgage in suit for the purchase money.   The defendant disputes that the purchase money is due, alleging that at the time the lot was conveyed to him with warranty it was encumbered by taxes assessed by the State and city of Charleston.   The defense appears to be in the nature of a counter claim, based on an alleged breach of the covenant of warranty, and seeks to assess damages for such breach as against a decree on the bond.   No question is made before us on the pleadings, nor are they set forth,—the only question being whether the taxes in question were a legal charge upon the lot at the time of the conveyance by the plaintiff to the defendant.   The question of the validity of the taxes only, as between the parties to this action, is before us, and is presented upon what, as appears, is an agreed statement of the facts.   The plaintiff purchased from Mrs. E. Barker, May 10, 1871.   Mrs. Barker sold under a power contained in a conveyance in trust, by way of mortgage to her by T. Street, on May 18, 1868.

The State tax in question was assessed in the year 1870, and, as we conclude from a somewhat imperfect statement, for the fiscal year 1870–1871.   At this time the title to the lot appears to have been in Street, subject to the mortgage to Mrs. Barker.   It is alleged

that "no distress was made by the State Treasurer upon the personal property, nor was his property advertised in 1871 or offered for sale for delinquent taxes." The first question to be considered is whether the State tax levied in the name of T. Street was a lien or charge on the lot in question at the time of the conveyance, with warranty to the defendant, so as to constitute an encumbrance on the land as it regards the covenant of warranty.

The general tax law in force at the time of the assessment in question was that of September 15, 1868, as amended.—14 Stat., 27, amended 14 Stat., 301, 366 and 619. The amendatory Act of March 8, 1871, (14 Stat., 619,) made certain changes as it regarded the times when certain official acts were required to be performed for the purpose of assessing and collecting taxes, but does not affect any of the provisions of the Act of 1868, out of which the present question arises. The Act of September 15, 1868, nowhere declares in terms that taxes assessed on or in respect of lands shall constitute a lien on such lands. Section 79 provides that when taxes, assessments and penalties charged against any parcel or lot of real property shall not be paid on or before a certain day, or collected by distress or otherwise, they should become "delinquent taxes on such real property, to be collected in the manner that is or may be prescribed by law," and that if not paid by a designated later day "the delinquent taxes, assessments and penalties of the current year shall be due and collected by the sale of such real estate in the manner that is or may be required by law." This Section, standing by itself, contains a clear authority to sell the specific lot in respect of which the tax is imposed for the satisfaction of the tax and penalties; it also reserves power, by subsequent legislation, to provide for further remedies by way of sale, as is clearly implied in the language "that is or may be prescribed by law." If this authority existed at the time the plaintiff conveyed, with warranty, it is clear that it constituted an encumbrance on the land covered by the covenant. The Act of September 15th contains a specific mode of enforcing the right to sell the lot for the payment of taxes. Section 107 provides for the publication of the list of "delinquent lands," with notice of sale, on a day fixed by law. Section 108 directs when and where the sale shall take place, by whom and in what manner it shall be conducted. All the lands taxed must be offered, and the person offering to take the least quantity thereof, and pay the taxes, assessments and penalties charged, shall be the

purchaser. The sale is to be continued from day to day until every parcel shall be "sold or offered for sale." There is a provision that in certain cases the Auditor shall purchase in behalf of the State; but lots in incorporated cities and villages being excluded from this provision, it does not apply to the premises in question situated in the city of Charleston.

It is alleged that the lot in question was not advertised in 1871 or offered for sale for delinquent taxes. Section 112 provides that "if the County Auditor, by inadvertence or mistake, or any other cause, shall have heretofore omitted, or shall hereafter omit, to publish the delinquent list of his County, it shall be his duty, unless all taxes, assessments and penalties charged thereon shall have been paid prior to the next July settlement thereafter of the County Treasurer, to charge the several parcels of real estate described in said list with said taxes, assessments and penalties of the year next succeeding such omission, and record, certify and publish the same as part of the delinquent list of such succeeding year, according to the provisions of this Act."

It does not appear whether the publication of the delinquent list of Charleston for the year 1871 was wholly omitted, or whether such a list was published but the lot in question omitted from it. We are not warranted in assuming a neglect of public duty beyond the direct statement of the case before us, and that is confined to a statement as to the lot in question. Assuming that the delinquent list for Charleston had been duly published, although, for some unexplained reason, the lot in question had been omitted, there appears to have been an exhaustive exercise of all the specific remedies for the sale of the Act then in force. It remains to be considered whether there were any other modes under the Act by which the taxes could be specifically enforced upon the lot in question. This question brings into consideration the general question of the nature of a tax as bearing upon its effect as a lien or encumbrance on land. It is clear, upon principle and authority, that the legislative power may subject all real estate within the State to charge for its ratable share in the support of the government of the State, and may, in like manner, impose a due share of the sums necessary for that purpose upon all persons subject to the authority of the State or owning property, real and personal, within the State, though residing elsewhere, as it regards such property. There are other subjects of the taxing power that do not enter into

the present question and need be no further considered than as illustrating the extended nature of the power of taxation independently of the constitutional restrictions imposed upon it. The power clearly implies authority to determine the effect of the imposition of taxes upon such property, real and personal, and upon the rights of the persons so taxed; for power to perform an act primarily implied power to do that which may be necessary to make such act effectual for the end intended, and the end of the taxation of persons or property is to procure money for public purposes, and that involves the conversion of the property taxed or the personal obligation to pay it in money.

It results from the foregoing that the Legislature possesses power to sell all lands subject to taxes, and this power may be delegated for enforcement. In former times delegations of that character were made to private persons, who became farmers of the revenue, but of late years it has been found more consistent with wise administration to confine such powers to the hands of persons strictly official, acting wholly in the interest of the State. Such delegations may be general or special—general where made the duty of a permanent public officer, and special where power to act in a particular instance. A class of instances is conferred temporarily upon an officer having general authority of that character or upon an officer not having such general authority.

It is very clear that whether that authority is delegated to a private farmer of the revenue or to a public officer, and whether it is general or special, its measure is in the act of delegation and not the extent of authority in the premises lodged in the hands of the legislative power. It is not to be presumed in any case that the Legislature in delegating to administrative officers powers of a certain limited and defined character for the collection of taxes intends to confer upon such officers the full measure of authority possessed by itself for that end. There are many powers capable of being exercised by the Legislature that good government demands should be used only in extreme cases, and that discretion as to the proper occasion for their exercise should rest with the Legislature and not be capable of exercise by executive or administrative officers, and among such powers those relating to taxes are prominent.

When, then, a question arises as to the extent of the powers of administrative officers in the imposition and collection of taxes, it cannot be determined by simply considering the authority of the

Legislature in the case, but the nature and extent of the authority delegated to the particular officers whose powers are to be considered. It is true that the power delegated has the same nature as that from which it was derived by delegation, but it does not necessarily follow that it has the same extent. Therefore, in applying the presumptions that arise from the nature of the power delegated, we may look to the nature of that power as it subsists in the hands of the Legislature, but in determining its extent the terms of the act of delegating are to be mainly considered. In order to create a lien on land, for the payment of a tax, it is necessary that there should be either a declaration to that effect by some act of the Legislature or necessity for such lien in order to render effective means provided for the enforcement of such tax. This results from the principles already stated, having regard to the nature of such liens. A lien implies a certain right of property in the subject of taxation. General right or authority over property, or dominion, carries with it, as accessory to it, full power of disposition. In that case dominion is the principal, and power of disposition the accessory, for dominion implies more than power of disposition, including also power of possession and protection and the means of making them effectual. Power of disposition may, however, become the principal, and whatever right *in rem* exists may follow as an accessory. Thus, where power to satisfy a demand by disposing of the property exists, without displacing the ownership or dominion over the property otherwise than as a consequence of the exercise of such power of disposition, the right of the lienor to deal with the property must be measured by the nature and extent of his power of disposition over it. It follows, therefore, that while the Legislature may, as an incident of the enforcement of a tax, create, in terms, a lien that may subsist with or without defined modes of converting such property into money, yet, failing to raise such lien directly, it can only be raised as incidental and subservient to such means as may be authorized for the enforcement of the tax, in which case it becomes an accessory to the power of disposition in respect thereto.

Having in view these principles, two questions present themselves in the present case: First. Has the Legislature, in the Acts affecting this case, declared in terms that a tax imposed on real estate shall constitute a lien on such real estate? and, second, if not, does the character of the powers conferred on the officers charged with the imposition and collection of taxes necessarily imply the exist-

ence of such lien as a means of rendering them effective? No provision of the tax Act in question appears that can be considered as constituting a lien in terms, and none is asserted; consequently, the only question for consideration relates to the implication of such a power.

It is clear that an implied and subservient power cannot subsist after that from which it is to be implied and to which it is subsequent has ceased to exist. Then, it is only necessary to show that the authority conferred on the administrative officers in the present case had been fully and exhaustively exercised before the sale and warranty, and it follows that there can be no subsisting lien.

In the review of the provisions of law already made, it appeared that the functions of the Auditor, Treasurer and Comptroller General in the present case are exhausted, and it must follow that there is no subsisting lien upon the land. It may be said that the provision of the Act looking to future legislation ought to be considered as affecting the question of the existence of a lien, that it contemplated new grants of authority from time to time as might be necessary to enforce the tax, and that this implied the continued subjection of the land to the tax, which would be equivalent to a lien. This provision has no specific effect, for it is clear that the Legislature may, without any such reservation, provide new or additional modes of enforcing the collection of a tax even after it has been imposed. It is not intended to be said that the burden imposed upon the land by a tax may be increased by legislative enactments subsequent to the imposition of the tax, but merely that the mode of enforcing the tax, considered as a remedy, may be moulded from time to time. In this respect this remedy is assimilated in principle to remedies for the enforcement of ordinary rights. As it was competent for the Legislature without the aid of this provision to make further provisions on the subject, it is clearly not such an effective reservation of power as to be entitled to be weighed as enlarging or defining the powers either of the Legislature or of any administrative officer over any particular tax. The Legislature has not chosen to exercise this power of further legislation as to the means of enforcing the tax in question, while we are only concerned with the inferences that may arise from powers conferred, and need not consider the case of a reservation out of which no active power has flowed. Then, from the foregoing considerations, it must be concluded that at the time of the conveyance of the lot with warranty

the State tax imposed in 1871 did not constitute a lien or encumbrance on the land.

The remaining question to be considered is, whether a city tax imposed upon the lot in question, and not paid, constituted a lien upon the lot after the expiration of one year from its imposition. If such lien did not continue after the year, then at the time of the sale and warranty in question it did not constitute an encumbrance on the lot so as to affect the covenant of warranty. Prior to 1868 Charleston city taxes were a specific lien on lands in respect of which they were assessed for one year and no longer.—*Goblet* vs. *Guerry*, 15 Rich., 152. At that time full power to lay and impose taxes for city purposes and to determine the effect of such taxes and the means of collecting them was committed to the City Council by the Act of 1783, as was held in *Goblet* vs. *Guerry*.

The only Act of the Legislature passed since that time affecting those powers of the City Council, and prior to the imposition of the tax in question, is the Act of March 1st, 1870, (15 Stat., 408,) but this Act is in terms confined to assessments of taxes on personal property and does not apply to the present case. The decision in *Goblet* vs. *Guerry* was based on the existence of a city ordinance making city taxes a lien for one year only. The question then arises, was that ordinance repealed by the ordinance of 1868, which is in the following words : " Be it ordained, &c., that hereafter taxes shall constitute a specific lien on the property taxed from the time when the liability for the said tax accrues, and the city taxes shall be paid prior to and in preference to all judgments, mortgages, pledges, debts or other liens of a private character on said property." This ordinance contains no express repealing clause, and can, therefore, be held to have repealed the pre-existing ordinance on the ground of repugnancy only. If the two ordinances can be reconciled together, then no such repugnancy exists. Both ordinances create specific liens ; the last fixes the time when that lien shall commence consistently with the former ordinance, but says nothing of its duration. There is nothing to change the period of duration established by the former ordinance. Both may coexist without limiting the proper sense or effect of either.

The provisions making the tax a first lien are the significant feature of the ordinance of 1868, and were clearly intended to supply a defect in this respect that had been pointed out in *Goblet* vs. *Guerry*. The same rules applied to statutes to ascertain their

repealing effect are applicable to ordinances, and their application must lead to the same consequences. If we can find the means of reconciliation, we are bound to apply such means, nor can the fact that the financial resources of a community may be affected lead to any other conclusion than that which flows from the ordinary rules of construction. It follows from this view that there was no authority of the statute or city ordinances in operation to extend the lien of the tax beyond the period recognized in *Goblet* vs. *Guerry*, and the lien of the tax must be regarded as expired prior to the sale with warranty.

The judgment of the Circuit Court should be set aside and the cause remanded to the circuit for further proceedings in conformity with the foregoing.

*McIver*, A. J., and *Haskell*, A. J., concurred.